## Phillips *v.* Lane.

A party cannot after verdict, except to evidence to the admission of which he made no objection during the trial; but he may in a bill of exceptions taken to the opinion of the court, overruling a motion for a new trial, embody such portions of the evidence as may be required to place the merits of the case fairly before the appellate court.

Where A. sold property to B. with a general warranty, upon which there was a judgment lien at the time of sale, and B. sold the property to C. warranting the peaceable possession of the same, and A. pointed out the property in the hands of C. to the sheriff, who sold it under an execution issued upon the judgment, it was held that trover by C. against A. would not lie.

A purchaser of property upon which there is a judgment lien, is a purchaser with notice.

IN error from the circuit court for the county of Hinds.

This was an action of trover brought by Lane, the defendant in error, at the May term, 1837, of the circuit court of Hinds county, to recover of Phillips, the plaintiff in error, damages for the conversion of three slaves. The testimony given upon the trial, in the court below, was in substance as follows:

On the 1st of October, 1835, Phillips sold to one George Sanderson lands, slaves, and other property to the amount of $67,925; $18,000 of which was to be presently paid; and took a deed from Sanderson to trustees to secure all the instalments of the purchase money, except the $18,000 before mentioned. Phillips warranted the title to the property sold to Sanderson, and undertook in the deed of conveyance to remove all liens and incumbrances which existed upon the property at the time of sale. It appeared, that on the 12th day of October, 1835, Sanderson paid $9,700, part of the $18,000, leaving $8,300 unpaid. It further appeared that at the date of the sale from Phillips to Sanderson, there was a judgment in favor of Grigg & Elliot outstanding against Phillips of $1878 78, which was a prior lien upon the property sold to Sanderson. And on the 6th of January, 1836, Sanderson sold the property to Lane, warranting the title and peaceable possession of the same; and that afterwards, when the sheriff came to levy the execution from the judgment in favor of Grigg & Elliot, Phillips

[Phillips *v.* Lane.]

pointed out the property in the hands of Lane, amongst which were the negroes in question: and the sheriff sold them at public auction.

On the 3d of February, 1838, the jury gave a verdict for the plaintiff below for $3,480. On the 7th of the same month, defendant moved the court for a new trial, which being refused, defendant's counsel filed a bill of exceptions to the opinion of the court, and brought the case into this court by a writ of error.

Other questions arose on the trial, but are not embraced in the opinion of the court.

Hutchinson for plaintiff in error.

All the matters put for error, arise out of the evidence, and the action of the court below upon it may best be considered *en groupe.*

1. The first position deducible is, that the direction, or what was the assertion of Phillips, that the judgment under which the sheriff's sale occurred, was of paramount lien, was true, was proper for him to make under existing circumstances, did not conflict with any principles of ethics or law, and being his only act, did not amount to a tort. He had sold and conveyed to Sanderson an estate including the slaves, warranting the title and covenanting to remove some out-standing judgment liens. $18,000 of the price was to have been paid down, out of which to remove those liens, and a deed in trust securing the remaining payments was reserved. There was no security for the $18,000, save what equity might afford. $8,300 of that sum remained unpaid. Lane purchased, knowing the facts. By inducing Phillips to believe that Sanderson's *choses* within his control, furnished an ample fund out of which he would pay the deficit, and that too, contrary to the fact, he procured a surrender of the deed of trust, novating the future instalments of Sanderson's purchase, but leaving Phillips in hopeless expectancy as to the $8,300. Phillips went into chancery to assert his equitable lien as against Lane. Sanderson having evaporated and passed away, and alleging partnership between Lane and Sanderson, and fraud, promise, &c. on the part of Lane. That bill was pending at the trial of this action. About or presently after the bill, the sheriff called on Phillips to pay the ancient

judgment.   It was, we have seen, to have been paid out of the $8,300.   The deeds indicated that result, deeds now held by Lane. The negroes were on the plantation that had been sold, and in Lane's possession.   Phillips asserted simply what was true, that the judgment bound the negroes.   He did not proceed with the sheriff to assist in finding or taking the negroes.   It does not appear whether the sheriff acted on the remark of Phillips, or upon prior or subsequent information.   All that is left to conjecture. The isolated assertion of an existing fact, and not even the disclosure of a hidden fact, is the only affair to transform Phillips into a trespasser.   It would seem that the bare statement of the facts ought to have been sufficient.   If Phillips had asserted ownership and delivered the slaves to the officer, the utmost that could be imagined or declared would have been, that to the value of the slaves Lane might claim deduction in the suit in chancery.   There was then no *tort.*

If the thing asserted had been untrue, and if certainly it had induced the levy and sale, the sheriff would have been a trespasser, and Phillips *tort fezer* by relation; but the judgment lien was superior to Lane's title, was unextinguished alone through the default, if not dereliction of Lane and his vendor, and the action of the officer was lawful.   After levy, the sheriff's possession being disturbed by Lane could have been redressed by this very action.   Barker *v.* Miller, 6 Johns. 195.   Jonner *v.* Jolliffe, 9 John. 381.

If it could be conceived that Lane's rights were disturbed by the isolated utterance of a truth, the remedy could only be *ex contractu :* and at whose door lay the violation of the contract? Whose the breach of faith,—and the fraud?   Phillips had retained and did not abandon his equitable lien.   Bagley *v.* Greenleaf, 7 Wheaton, 46—50.   Cole *v.* Scott, 2 Wash. 141.   It ought to be extended so as to embrace personalty, as did the law of Rome.   2 Story's Equity, 462 to 483.

The error in the refusal of the first and second instructions sought, it is believed, is too palpable to require farther illustration.   The jury ought to have been instructed that Sanderson could not have recovered for a breach of warranty without having rendered the deficit of his purchase money; and that Lane's

[Phillips *v.* Lane.]

remedy, if any, was in contract. The surprise is, that the charges were refused. The refusal could only confuse and confound the minds of jurors in coming to a result upon facts, in themselves exceedingly simple.

2. The refusal to instruct that there must have been an actual taking or conversion, or otherwise a demand before suit, was alike erroneous, and calculated to produce an unjust verdict.— The rule is, if the possession of the defendant have been lawful, or by actual finding, and not actually tortious, a demand must precede suit. 3 Starkie's Ev. 1449. 15 John. 431. Yet Phillips had no possession or finding of any sort. If the sheriff's possession could be esteemed that of Phillips's, by relation or imputation, still it was lawful, and there ought to have been at least a demand of reparation or satisfaction. La Place *v.* Aupois, 1 John. Ch. 406. But, as before intimated, the evidence did not show that the sheriff acted on Phillips's assertion of the liability of the negroes to the execution. The date of the judgment was on his paper, and the record of the deeds showed a subsequent conveyance to Sanderson. The creditor may have intervened his application. The naked assertion of Phillips of the fact of the priority of lien does not therefore appear to have been even the disclosure of a fact unknown to the sheriff. With what propriety, then, could Phillips be regarded as certainly causing the levy?— And why introduce the idea of the sheriff being Phillips's agent? He was the agent of the creditor and the factor of the law in taking in execution negroes bound by the judgment. If, however, there had been any thing extraordinary in the character of Phillips's assertion or act, its legal character or influence was not a question for the jury, but one of law; and the Judge should have declared its character and influence. 3 Starkie's Ev. 1492. But he charged the jury that if they believed the sheriff acted as Phillips's agent in the levy and sale, a demand was not needed. This threw upon the jury the ascertainment of the legal nature and effect of Phillips's assertion.

Again, in regard to the doctrine of constructive conversion:— it is laid down very definitely in Bristol *v.* Burt, 7 John. 254.— There the government officer assumed ownership, took manual possession, maintained it with military force,—or which would

11*

have been equivalent if with strong hand,—and exerted domi-
nion over the goods, and all without right and to the injury of
the plaintiff's right, and it was held to be a constructive posses-
sion; yet still the action brought was preceded by demand.—
How different that from this case, in all its ingredients. The
assumption of ownership and exertion of dominion without right,
to the injury of the owner's right, is the principle of constructive
conversion. Here there was no assumed ownership, only the
bare reference, orally, to an existing fact; an assertion that any
other person might have made without blame or liability.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

As a preliminary question we must first determine whether the
exceptions were so taken, as to entitle the merits of the case to
consideration. The verdict was rendered on the 3rd of February,
and no exceptions were taken on the trial: on the 7th, a motion
was made for a new trial, and the exceptions were taken to the
overruling the motion, which it is said was in accordance with
the act of 1830, Laws of Miss. 314. By an examination of this
statute it will be seen, that power is expressly given to except to
the decision of a circuit judge, in granting or refusing of a new
trial. On taking the exception, the party is required to embody
the substance of the evidence, and the reasons for a new trial in
the bill of exceptions; and may assign as error in the appellate
court, the granting or refusing the new trial. In this manner
the merits of the motion are placed fairly before the appellate
court, which for the purposes of the motion is made to occupy
precisely the place of the circuit court. From this act it necessa-
rily follows that whatever may be urged as a reason for a new
trial before the circuit court, may also be presented to the appel-
late court by the bill of exceptions.

A new rule is introduced, but it applies merely to motions for
new trials; and does not abrogate the former law in relation to ex-
ceptions taken during the trial. On the contrary, both rules are
now in operation. The consequence is that there are two kinds
of bills of exceptions recognised by law; the first for matters aris-
ing during the progress of the trial, and the second, for matters
arising on motion for a new trial. It was on the first mentioned

class that the adjudications of this court have been had, in which the rule as laid down in the case of Walton *v.* the United States, was, as we think correctly adopted.   But in regard to the second class this rule can have no further application than to require the party to take his exception when his motion is overruled.   If this distinction be the correct one, it follows that whatever a party may urge for a new trial, he may also by exception place before the appellate court, for there he has a right to have the whole merits of his motion re-investigated.   When we have settled therefore, the questions which may, or may not be raised on a motion for a new trial, it will only remain to determine whether any such question was raised in the present motion.

A party will not be heard to move for a new trial for the admission of improper evidence, when such evidence was permitted to go to the jury without objection.   Under such circumstances, the objection is considered as waived, unless it be made and noted when the evidence is offered.   But the misdirection of the judge, is always open for consideration on a motion for a new trial.   It is also proper to assign as a reason in support of such motion, that the verdict was contrary to law and evidence.   This does not bring up the admissibility of the evidence, but involves merely the propriety of the verdict on the whole view of the case, the facts being supposed to be fresh in the memory of the court.   As an appellate court, we should not be able to correct an error in the decision of the circuit court, unless the evidence be made a part of the record; hence the statute requires that the bill of exceptions shall contain the substance of the evidence.   When it is so placed before us, we are to judge of the propriety of the verdict from the evidence, precisely as the circuit court does from its knowledge of the evidence, and if on the whole view of the case we think that the circuit court erred in refusing the motion, that error must be corrected by granting it.   For this purpose, therefore, it will be sufficient if the exception be taken, and the evidence reduced to writing, on the determination of the motion, for this is the obvious meaning of the statute.   How does this case stand under an application of these views?

The verdict was rendered on the third, and the motion for a

new trial was argued and decided on the 7th, four days afterwards, on which last day the bill of exceptions was taken to the decision of the court in overruling the motion, and it contains the substance of the evidence and also the reasons for a new trial. This is all that the statute requires; and every thing that was legitimately before the circuit court on the motion, is also before us, and if there has been error we must correct it.

Such of the facts as require notice are briefly these. Phillips sold the negroes in question by full warranty, to Sanderson, who sold to Lane the plaintiff below. At the time of sale there was a judgment against Phillips which bound the negroes; both Sanderson and Lane, were therefore purchasers with full notice of the incumbrance. An execution afterwards emanated on the judgment and came to the hands of the sheriff. When the sheriff was about to levy the execution, Phillips gave him the names of these negroes, and directed him to levy on them, which levy was made and the negroes sold. Phillips was not at the sale, nor did he take the negroes, or otherwise interfere. Did these facts entitle the plaintiff to an action of trover? The question seems to us to admit of no other than an answer in the negative.

The *gist* of the action of trover is conversion, and the conversion must be illegal, otherwise the action cannot be maintained. If on the trial therefore it appears that the property was rightfully taken, or rightfully withheld, the action is at an end. In this case we cannot question but what it was rightfully taken by the sheriff. It was subject to the execution which he levied on it, and a right was thereby given to take it. The agency which Phillips had in bringing about the levy, cannot alter the right, and it would be strange if he could be held liable for a constructive conversion, when the sheriff who took the property and held the actual possession, was not liable. Lane held the property subject to an incumbrance which could be legally enforced at any time, and had purchased under a knowledge of its existence. How can he complain of a consequence which he ought to have expected. In trover, the plaintiff must prove right of property and right of possession in himself, and conversion either actual or constructive by the defendant. In this instance he had no right of pos-

[Phillips *v.* Lane.]

session, as against this execution, or at least his right of possession was liable to be interrupted at any time. But it does not appear that the sheriff made the levy in consequence of what Phillips said to him. It may be that his remarks or direction had no influence on the conduct of the sheriff. For these reasons we think there can be no doubt but what the verdict was against law and evidence. It is therefore unnecessary to say any thing as to the charges which the court gave to the jury.

The judgment must be reversed and a new trial granted.